UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| Knights Franchise Systems, Inc., a Delaware Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) Civil Action No. 1:05-CV-014 |
| Dynasty Co., LLC (a/k/a Dynesty, L.L.C. and Dynasty, LLC) a Tennessee Corporation; | ) ) Mattice/Carter ) ) |
| Defendant. | ) ) |

## REPORT AND RECOMMENDATION

### I. Introduction

After the District Court entered default in this case against the defendant, Dynasty Co., LLC (Dynasty), and in favor of the plaintiff, Knights Franchise Systems, Inc. (KFS), the District Court referred this matter to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) for an evidentiary hearing and a report and recommendation on damages, if any, to be awarded the plaintiff. Accordingly, a hearing on damages was held on November 17, 2005, and the undersigned makes the following report and recommendation.

### II. Findings of Fact

1.      KFS brought this action January 20, 2005 against four defendants alleging nine counts against the defendants. On June 6, 2005, the Clerk of the Court entered a default in this action against Dynasty. Subsequently, on November 16, 2005, KFS voluntarily dismissed three of the four defendants leaving Dynasty as the only defendant in this action. On that same date KFS also voluntarily dismissed six of the nine original counts leaving three: Breach of Agreement for

1

Past Due Recurring Fees, plus interest; Breach of Agreement for Failure to Pay Liquidated Damages, plus interest; and Attorney's Fees.

2. On or about August 21, 2000, the plaintiff, KFS, entered into a franchise agreement ("Franchise Agreement") with Dynasty for the operation of a 130-room guest lodging facility located at 2100 S. Market Street, Chattanooga, Tennessee 37408, Site No. 1955. Pursuant to section 5 of the Franchise Agreement, Dynasty was obligated to operate a Knights guest lodging facility for a twenty year term in exchange for using the Knights System and Knights Marks in association with the operation and use of the lodging facility as part of the KFS' franchise system. [See Cox Declaration, Doc. 18]

3. Pursuant to the Franchise Agreement, Dynasty was required to perform the following actions, entitling KFS to terminate the Franchise Agreement:

> (a) make certain periodic payments to KFS for royalties, system assessments, taxes, interest, reservation system user fees, and other fees;
>
> (b) to prepare and submit monthly reports to KFS disclosing the amount of gross room revenue earned by Dynasty at the facility in the preceding month for purposes of establishing the amount of royalties and other fees due to KFS; and
>
> (c) to maintain accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility and to allow KFS to examine and audit the entries in these books, records and accounts.

Dynasty failed to fulfill the aforementioned obligations. [See Cox Declaration, Doc. 18].

4. By letter to Dynasty dated May 29, 2003, KFS terminated the Franchise Agreement due to Dynasty's unauthorized transfer of the facility to American Hotel Group, LLC without KFS'

2

prior consent, resulting in a breach of Franchise Agreement by Dynasty. [See Cox Declaration, Doc. 18].

5.      Pursuant to Sections 7, 18.2, and Schedule C of the Franchise Agreement, Dynasty was required to make certain periodic payments to KFS for royalties, system assessments, taxes, interest, reservation system user fees, and other fees collectively referred to as recurring fees. The amount of Recurring Fees was based on a percentage of the Facility's gross room revenue. Dynasty failed to make such payments for a six month period from December 2002 through May 2003. Because Dynasty did not provide KFS with monthly accounting reports for this time period, KFS has estimated the defendants' Recurring Fees for this time period based on the previously reported gross room revenue. As of the date of termination, Dynasty had incurred monthly recurring fees owed to KFS in the amount of $20,053.43. [See Cox Declaration, Doc. 18].

6.      Section 7.3 of the Franchise Agreement provides KFS is entitled to interest on the principal amount of recurring fees owed and outstanding as of the date of the termination, calculated at a rate of 1.5% per month (or 18% per year). Based on the $20,053.43 in recurring fees due, the amount of interest due from May 29, 2003 (the date of termination) through November 17, 2005 (the date of the Court's hearing) (a total of 903 days at $9.89 per day) is $8,930.67 . [See Cox Declaration, Doc. 18].

7.      Section 18.1 of the Franchise Agreement provides KFS shall receive liquidated damages in the amount of $50,000.00 or the amount of the recurring fees for the previous year, whichever is greater, as a result of a breach or premature termination of the Franchise Agreement. The purpose of these liquidated damages is to compensate KFS for the loss of income it will suffer if

the Franchise Agreement terminates before the 20 year term expires. The liquidated damages are in the nature of lost recurring fees that KFS would have received but for premature termination of the Franchise Agreement. [See Cox Declaration, Doc.18].

8.  Section 7.3 of the Franchise Agreement provides KFS is entitled to interest on the liquidated damages, calculated at the rate of 1.5% per month (or 18% per year). The amount of interest on the $50,000.00 in liquidated damages from June 28, 2003 (30 days after the date of termination) through November 17, 2005 (the date of the Court's hearing) is $21, 519.45 (a total of 873 days at $24.65 per day). [See Cox Declaration, Doc.18].

9.  Section 17.4 of the Franchise Agreement, provides that "[t]he non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Franchise Agreement or collect amounts owed under this Franchise Agreement. [See Cox Declaration, Doc. 18].

10. Pursuant to the Declaration of Kenneth R. Ozment, Esq., the law firm of Troutman Sanders, LLP has invoiced attorney fees and expenses to KFS in the amount of $14,639.13 for work done in connection with the pursuit of KFS' claims against the Defendant Dynasty through November 17, 2005. [See Ozment Declaration, Doc. 23].

11. Pursuant to the Declaration of Arnold A. Stulce, Jr., the law firm of Stulce & Yantis has invoiced Troutman Sanders, LLP /KFS $4,165.72 for work done in connection with the pursuit of KFS' claims against Dynasty through November 17, 2005. [See Stulce Declaration, Doc. 19].

III. Conclusions of Law

*A. Recurring Fees and Liquidated Damages*

The purpose of damages in breach of contract cases is to place the plaintiff as nearly as

possible in the same position he would have been in had the contract been performed. *Waggoner Motors, Inc. v. Waverly Church of Christ,* 159 S.W.3d 42, 57 (Tenn. Ct. App. 2004); *Action Lamons v. Chamberlain,* 909 S.W.2d 795, 801 (Tenn. Ct. App.,1993); *Ads, Inc. v. William B. Tanner Co.,* 592 S.W.2d 572 (Tenn. Ct. App.1979). In the instant case, the damages sought by the plaintiff are those stipulated by the parties in the Franchise Agreement. The Recurring Fees are fees the defendant should have paid to the plaintiff but did not during the time that the Franchise Agreement was still in effect. The purpose of the $50,000.00 is to compensate the plaintiff for the Recurring Fees which the plaintiff would have received during the remaining seventeen years of the Franchise Agreement had the defendant not breached the agreement. In the Franchise Agreement, the parties agreed to prejudgment interest on the damages at a specified rate.

"The term 'liquidated damages' is defined by case law as a sum stipulated and agreed upon by the parties at the time they enter their contract, to be paid to compensate for injuries should a breach occur." *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 96 (Tenn. 1999); *see also Eatherly Construction Co. v. HTI Memorial Hosp.,* 2005 WL 2217078 *7 (Tenn. Ct. App. 2005). "The stipulated amount represents an estimate of potential damages in the event of a contractual breach where damages are likely to be uncertain and not easily proven." *Id.* If the liquidated sum is a reasonable prediction of potential damages and the damages are indeterminable or difficult to ascertain at the time of the contract formation, Tennessee law provides the liquidated damages provision is enforceable. If, however, the provision appears to be simply a penalty for a breach of contract, the provision is unenforceable as against public policy. *Guiliano*, 995 S.W.2d at 99-101; *Eatherly Construction Co.* , 2005 WL 2217078 at 7.

5

In the instant case, the Franchise Agreement provides for payment of unpaid and due Recurring Fees but does not stipulate a set amount. Thus these damages might more accurately be called compensatory damages as opposed to liquidated damages. Regardless of their label, the contractual clause providing for the payment of outstanding Recurring Fees appears reasonable. Parties to a contract are free to agree to terms that may not seem desirable to outsideers, and courts should not interfere in the contract unless the terms violate public policy. *Guiliano*, 995 S.W.2d at 100. Accordingly, the undersigned concludes the amount requested for Recurring Fees which were due before the Franchise Agreement was terminated and the prejudgment interest on them are reasonable and should be awarded the plaintiff.

In addition, the undersigned concludes the $50,000.00 liquidated damages amount is also reasonable. The liquidated damages provision of the Franchise Agreement provides that upon breach, liquidated damages are $50,000.00 or the amount of Recurring Fees for one year, which ever is greater. Given that recurring fees for six months totaled approximately $20,000.00 and the term of the contract was twenty years, the provision for liquidated damages is a rather modest estimate of future Recurring Fees which would have been earned absent the breach. While the interest rate of the prejudgment interest is a somewhat high, eighteen percent per year, the parties were free to bargain for this rate and did so. Consequently, the undersigned also concludes the plaintiff is entitled to liquidated damages in the amount of $50,000.00 with prejudgment interest in the amount of $21,519.45.

*B. Attorney's Fees and Expenses*

In a typical diversity case, attorney's fees should be awarded only if authorized under state law. *Alyeska Pipe Line Service Co. v. Wilderness Society*, 421 U.S. 240, 259 n. 31 (1975);

*Tiedel v. Northwestern Michigan College*, 865 F.2d 88, 92 (6th Cir. 1988). Under Tennessee law, attorney's fees generally are not recoverable in the absence of a statute or contract specifically providing for such recovery. *Kultura, Inc. v. Southern Leasing Corp.*, 923 S.W.2d 536, 540 (Tenn. 1996); *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 338 (Tenn. 1985).

Because the parties' Franchise Agreement provides the prevailing party is entitled to costs and reasonable attorney's fees, the trial court has no discretion regarding whether to award costs and fees. *Hosier v. Crye-Lieke Commercial, Inc.*, 2001 WL 799740 *6 (Tenn. Ct. App. July 17, 2001). However, the amount of the award is within the court's discretion provided the court is guided by the applicable law. *Id.* (citing *Albright v. Mercer,* 945 S.W.2d 749, 751 (Tenn. Ct. App. 1996); *Airline Constr. Inc. v. Barr*, 807 S.W.2d 247, 270 (Tenn. Ct. App. 1990); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). Tennessee's rules governing an attorney's professional conduct provide guidance concerning what constitutes reasonable attorney's fees. *See Hosier*, 2001 WL 799740 *6 -*8. Tenn. S.Ct. R. 8, RPC 1.5 provides "[a] lawyer's fee and charges for expenses shall be reasonable." It then enumerates factors to consider in determining the reasonableness of fees and expenses including: the time and labor required; the novelty and difficulty of the questions involved; the skill required to perform the legal services properly; the fee customarily charged in the locality for similar services; and the experience, reputation, and ability of the lawyer who performed the services. Tenn. S.Ct. R. 8, RPC 1.5.

The prevailing party bears the burden to make out a prima facie case for the fees sought. *Hosier*, 2001 WL 799740 *6 (citing *Wilson Mgmt. Co. v. Star Distribs. Co.*, 745 S.W.2d 870,

873 (Tenn. 1988); *In re Estate of Perlberg*, 694 S.W.2d 304, 309 (Tenn. Ct. App. 1984)). This task is ordinarily accomplished by presenting an affidavit of the attorney who performed the work. *Hosier*, 2001 WL 799740 *6 (citing *Hennessee v. Wood Group Enterprise, Inc.*, 816 S.W.2d 35, 37 (Tenn. Ct. App. 1991)). Counsel for plaintiff have submitted affidavits and invoices detailing the work performed and the fees sought. Counsel have not included in the fees requested amounts billed for matters relating to claims and to defendants which have been dismissed from this case. The hourly rates and the hours worked for fees sought are set forth below.[1]

|  | Hourly Rate | Hours Worked | Total |
| --- | --- | --- | --- |
| Mark Vanderbroek (partner) | $345.00 | 0.2 | $69.00 |
| Ken Ozment (Senior Assoc.) | $230.00 | 22.6 | $5,198.00 |
| Vince Bushnell (Junior Assoc.) | $207.00 | 5.3 | $1, 097.10 |
| Kreig Kitts (Library Staff) | $124.00 | .4 | $49.00 |
| Arnold Stulce (Partner) | $200.00 | 10.8 | $2,160.00 |
| Angela Ledford (Assoc.) | $140.00 | 11.8 | $1,650.00 |
| Total |  |  | $9,127.00 |

Plaintiff has submitted the affidavit of Chattanooga attorney Scott Brown who has thirty-six years of litigation experience in southeast Tennessee. Mr. Scott opines that the fees

---

[1] Mark Vanderbroek, Ken Ozment and Vince Bushnell are attorneys for Troutman Sanders LLP in Atlanta, Georgia. Arnold Stulce and Angela Ledford are attorneys for Stulce & Yantis in Chattanooga, Tennessee.

requested:

> reflect reasonable attorney fees for the described services and activities; that the rates set forth in the Affidavit are reasonable for the Chattanooga, Tennessee area and for the skill, experience, expertise and nature of the matter litigated before this Court and that the services described were and are reasonably necessary to fully, adequately, fairly and appropriately represent the interests of Knight's Franchise Systems, Inc., in the matters being litigated before this court.

(Affidavit of Scott Brown, Doc. 20). The undersigned agrees and will recommend the above fees be awarded to plaintiff.

Plaintiff also seeks $1,225.43 in expenses incurred by Troutman Sanders LLP which include service of process fees, and private investigation fees incurred in an effort to discover the whereabouts of the defendants.[2] Plaintiff also seeks expenses incurred by Stulce & Yates, local counsel in Chattanooga Tennessee, in the amount of $353.72. These expenses are for the filing fee and courier fees. Total expenses sought are $1,579.15. The undersigned also finds this amount to be reasonable.

Finally, plaintiff seeks to recover a flat fee of $7,000.00 charged by Troutman Sanders LLP to prepare, file and serve the complaint in this action. The time and costs for Troutman Sanders attorneys to prepare, file and serve the complaint, when broken out into an hourly rate are:

|  | Hours Worked | Hourly Rate | Total |
| --- | --- | --- | --- |
| Mark Vanderbroek | 1.6 | $1,527.13 | $2,443.40 |
| Ken Ozment | 4.8 | $929.29 | $4,556.60 |
| Total |  |  | $7,000.00 |

---

[2]The individual defendants are the owners of Dynasty, and their knowledge of the business was important in pursuing a claim against Dynasty.

The undersigned finds the flat fee to be excessive in light of the time expended in preparing, filing and serving the complaint. Plaintiff may recover counsels' reasonable hourly rate for the time expended to prepare the complaint and file it. Thus fees recoverable for legal services rendered to prepare, file and serve the complaint are as follows:

|  | Hourly Rate | Time Worked | Total |
| --- | --- | --- | --- |
| Mark Vanderbroek | $345 | 1.6 | $552.00 |
| Ken Ozment | $230 | 4.8 | $1,104.00 |
| Total |  |  | $1,656.00 |

Accordingly, the amount of attorney's fees and expenses which the undersigned shall recommend be awarded to the plaintiff are as follows:

| Attorney's Fees (General Litigation) | $9,127.00 |
| --- | --- |
| Attorney's Fees (Preparing, Filing, Serving the Complaint) | $1,656.00 |
| Litigation Expenses | $1,579.15 |
| Total | $12,362.15 |

## IV. Conclusion

For the reasons stated herein, it is RECOMMENDED[3] that judgment be entered in favor of the plaintiff and damages be awarded to the plaintiff as follows:

| | |
|---|---|
| Outstanding monthly recurring fees (as of the date of termination) | $ 20,053.43 |
| Interest on outstanding fees | $ 8,930.67 |
| Liquidated Damages | $ 50,000.00 |
| Pre-judgement interest on Liquidated Damages | $ 21,519.45 |
| Attorney's Fees and Expenses | $ 12,362.15 |
| TOTAL | $112,865.70 |

s/William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[3] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).